FILED '10 NOV 29 15:23USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

JACK STEWART,                                           Civil No.  09-3039-CL

        Plaintiff,                                       ORDER

        v.

JACKSON COUNTY, OREGON; ROGUE
VALLEY INTERNATIONAL-MEDFORD
AIRPORT; BRIAN GEBHARD;  and
GREG HUEBNER,

        Defendants.

CLARKE, Magistrate Judge:

      Plaintiff Jack Stewart brings this action against Defendants alleging violation of

his civil rights, 42 U.S.C. § 1983, and Title VII racial discrimination.  Plaintiff seeks non-

economic damages, punitive damages, and attorney's fees and costs.  This Court has

jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.  The parties have executed written

consents to entry of judgment by a magistrate judge (#9).  28 U.S.C. § 636(c).  Before the

Court is Defendants' motion for  summary judgment (#62).  Plaintiff, who is proceeding

pro se, was advised by the court of summary judgment standards (#41).  Plaintiff has not

responded to Defendants' motion.[1]  For the reasons explained, the Court grants

Defendants' motion.

## **BACKGROUND**

Construing the facts in the light most favorable to the non-movant, the record

reveals the following:

Defendant Jackson County owns and operates the Rogue Valley International-

Medford Airport. Defendant Brian Gebhard is employed by the County as the airport's

security supervisor.  Gebhard's duties include supervising the many airport enforcement

officers (AEOs) who work at the airport.  Defendant Greg Huebner is an AEO at the

airport.  Both Gebhard and Huebner are Caucasian.

Plaintiff Jack Stewart is African-American.  Plaintiff first met Huebner when

Plaintiff was working at Erickson Crane.  Huebner told Plaintiff there was an open AEO

position at the airport, and "pretty much recruited" Plaintiff for the position.  (Pl. Dep.

19:8.)  Plaintiff was hired by Gebhard and began working for the County as a part-time

AEO on January 17, 2006.

Plaintiff and Huebner became friends and they socialized outside of work on at

least one occasion.

On July 23, 2006, Plaintiff had a verbal altercation with a Budget rental car

employee, Kat Sheffer, who worked at the airport.  Following the incident, Huebner

discussed it with another AEO, John Ackerman.  Plaintiff claims Ackerman told him that

---

[1] The certificates of service attached to Defendants' motion papers show that Plaintiff was served with the motion at his address of record.

Huebner had said, "The nerve of that guy, a six foot two, 275 pound black man trying to intimidate a little white woman."

Huebner's alleged comment about Plaintiff, if it was made, was made on August 3, 2006.

Plaintiff complained to Gebhard about Huebner's comment. An investigation was conducted by Janet Rantz of Jackson County Human Resources Department. On September 25, 2006, she concluded among other things that the evidence was inconclusive as to whether Huebner's comment to Ackerman had included a reference to Plaintiff's race, and that Plaintiff had not been subjected to any race discrimination. In addition, as a result of her investigation and conclusion that there was friction between various airport employees, the County decided to have all of its airport employees attend a seminar on improving their communications with each other.

On August 7, 2007, Plaintiff became involved in a verbal altercation with airport maintenance employee Michael Mega.

On the night of August 31 and September 1, 2007, Plaintiff had several verbal confrontations with AEO Twyla Balzarini.

On September 7, 2007, Gebhard met with Plaintiff to discuss Gebhard's concerns about Plaintiff's use of sick leave.

On October 15, 2007, an AEO position opened up on the day shift and Gebhard granted Plaintiff's request for a transfer to the day shift.

County employees made no comments to Plaintiff of a racial nature. On occasion, Plaintiff told racial jokes and others probably told him racist jokes; Plaintiff doesn't think

it's a big deal if its funny as long as you don't offend the other person.

In the fall of 2007, Janice Deardorff, an independent human resources consultant, was hired by Jackson County to investigate Plaintiff's claims of racial discrimination, hostile work environment, and retaliation.  Her report at the end of October 2007 concluded, among other things, that Plaintiff failed to provide evidence showing that his race was a factor in any workplace events, and that neither Plaintiff nor anyone else interviewed reported hearing any County employees make racial comments.

On January 29, 2008, Plaintiff was placed on a five-day unpaid suspension from work and was required to complete anger management counseling.

On January 29, 2008, Plaintiff filed a complaint with the Oregon Bureau of Labor and Industries (BOLI) alleging that Jackson County had engaged in illegal discrimination and harassment.  Following an investigation, on January 29, 2009, BOLI determined there was insufficient evidence to support Plaintiff's allegations.

Gebhard notified Plaintiff by letter dated March 26, 2008, that his employment was being terminated for three reasons:  (1) he had unauthorized absences from work on February 16-19, 22-26 and 29 and March 1-4, 7-11 and 14-17, 2008; (2) he failed to complete mandatory anger management education and counseling program;  and (3) he had been dishonest and misrepresented facts during the pre-disciplinary meeting held on March 17, 2008.

On April 27, 2009, Plaintiff filed this lawsuit.

Plaintiff is not claiming that the County had an official policy, practice or custom of discriminating against African-American employees.

## II. **LEGAL STANDARDS**

Pursuant to Rule 56(c), summary judgment "should be rendered, if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Freeman v. Oakland Unified Sch. Dist., 291 F.3d 632, 636 (9th Cir. 2002). The court cannot weigh the evidence or determine the truth but may only determine whether there is a genuine issue of fact. Playboy Enters., Inc. v. Welles, 279 F.3d 796, 800 (9th Cir. 2002). An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The moving party must carry the initial burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). The moving party meets this burden by identifying for the court portions of the record on file which demonstrate the absence of any genuine issue of material fact. Id.; Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party. Allen v. City of Los Angeles, 66 F.3d 1052, 1056 (9th Cir. 1995). All reasonable inferences are drawn in favor of the non-movant. Gibson v. County of Washoe, 290 F.3d 1175, 1180 (9th Cir. 2002).

If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts which show there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2); Auvil v. CBS "60 Minutes", 67 F.3d 816, 819

(9th Cir. 1995); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 & n.4 (1986).

Summary judgment should be granted for the movant, if appropriate, in the absence of

any significant probative evidence tending to support the opposing party's theory of the

case. Fed. R. Civ. P. 56(e); THI-Hawaii, Inc. v. First Commerce Fin. Corp., 627 F.2d

991, 993-94 (9th Cir. 1980); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 290

(1968). Conclusory allegations, unsupported by factual material, are insufficient to defeat

a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56,

designate specific facts which show there is a genuine issue for trial. Devereaux, 263

F.3d at 1076.

### III. DISCUSSION

Plaintiff alleges he was subjected to race discrimination in violation of 42 U.S.C.

§ 1981 which prohibits discrimination in the "benefits, privileges, terms and conditions"

of employment, § 1981(b); 42 U.S.C. § 1983 which allows an action for deprivation of

federal rights under color of law; and Title VII, 42 U.S.C. § 2000e et seq., which

prohibits discrimination against an employee based on race, § 2000e-2(a)(1). See

Mustafa v. Clark County Sch. Dist., 157 F.3d 1169, 1180 n.11 (9th Cir. 1998) ("Sections

1981 and 1983 prohibit discrimination based on race, ethnic background, ancestry, and/or

national origin committed under color of law."). The Ninth Circuit has stated that it

"applies the same standards to disparate treatment claims pursuant to Title VII, . . ., and

§§ 1981 and 1983." Mustafa, 157 F.3d at 1180 n.11; see Drake v. City of Fort Collins,

927 F.2d 1156, 1162 (10th Cir. 1991) ("Cases establish that, in racial discrimination suits,

the elements of a plaintiff's case are the same, based on the disparate treatment elements outlined in <u>McDonnell Douglas</u>, whether that case is brought under §§ 1981 or 1983 or Title VII."); <u>Surrell v. Cal. Water Serv. Co.</u>, 518 F.3d 1097, 1103 (9th Cir. 2008) ("When analyzing § 1981 claims, we apply 'the same legal principles as those applicable in a Title VII disparate treatment case.'").  However, a plaintiff must exhaust administrative remedies by filing a claim with the EEOC or BOLI before bringing a Title VII action. Sections 1981 and 1983 do not require such exhaustion.  42 U.S.C. § 2000e-5(f); <u>Surrell</u>, 518 F.3d at 1103.

A plaintiff may show a violation of Title VII by proving disparate treatment or disparate impact, or by proving the existence of a hostile work environment.  <u>Sischo-Nownejad v. Merced Cmty. Coll. Dist.</u>, 934 F.2d 1104, 1109 (9th Cir. 1991), <u>abrogated on another ground</u> <u>as stated in</u> <u>Dominguez-Curry v. Nev. Transp. Dept.</u>, 424 F.3d 1027 (9th Cir. 2005).

Plaintiff alleges a claim for discrimination based on racial harassment /hostile work environment.  To establish a prima facie case of racial harassment /hostile work environment based on race under Title VII, a plaintiff must establish:  (1) he was "'subjected to verbal or physical conduct'" because of his race; (2) "'the conduct was unwelcome,'" and (3) "'the conduct was sufficiently severe or pervasive to alter the conditions of [plaintiff's] employment and create an abusive work environment.'"  <u>Manatt v. Bank of Am., NA</u>, 339 F.3d 792, 798 (9th Cir. 2003) (quoting <u>Kang v. U. Lim Am., Inc.</u> 296 F.3d 810, 817 (9th Cir. 2002)); <u>Craig v. M & O Agencies, Inc.</u>, 496 F.3d 1047, 1054-55 (9th Cir. 2007).  The working environment must be perceived both subjectively

and objectively as abusive. <u>Manatt</u>, 339 F.3d at 799 n.6.  An employer is liable for failing

to remedy  harassment which it knows or should know about.  <u>Fuller v. City of Oakland</u>,

47 F.3d 1522, 1527 (9th Cir. 1995); <u>Craig</u>, 496 F.3d at 1055.

Plaintiff admits that county employees made no comments to him of a racial

nature.  The only statement at issue in his complaint is the alleged statement made by

Huebner to Ackerman on August 3, 2006, and told to Plaintiff by Ackerman.

As to the  exhaustion requirement applicable to Title VII cases, "A discrimination

charge under Title VII shall be filed within 300 days of the alleged unlawful employment

practice in jurisdictions, such as Oregon,  [a deferral state,] that have joint worksharing

agreements between the EEC [sic] and an equivalent state agency." <u>Gamez-Morales v.</u>

<u>Pac. Nw. Renal Servs., LLC</u>, No. CV 05-546-AS, 2006 WL 2850476, at *15 (D. Or. Sept.

29, 2006), <u>aff'd</u>, 304 Fed. Appx. 572 (9th Cir. 2008).  Here, the record shows that

Plaintiff filed his discrimination claim with BOLI on January 29, 2008, which is more

than 300 days after the complained-of event.  Accordingly, the court will not consider this

comment for purposes of Plaintiff's Title VII claim.

Even if the comment was made, however, it is an isolated and "stray remark[],"

<u>Mustafa</u>, 157 F.3d at 1180,  which is not sufficiently pervasive so as to alter the

conditions of Plaintiff's work environment.  And, while the statement is serious, alone it

is not sufficiently severe.  Lack of racial sensitivity does not amount to actionable

harassment.  <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 787 (1998); <u>see</u> <u>Sanchez v.</u>

<u>City of Santa Ana</u>, 936 F.2d 1027, 1031, 1036-37 (9th Cir. 1990); <u>Vasquez v. County of</u>

<u>Los Angeles</u>, 349 F.3d 634, 642-44 (9th Cir. 2003).  On this record, Plaintiff fails to make

out a prima facie case of racial harassment /hostile work environment discrimination.

Plaintiff also alleges a discrimination claim for disparate treatment in termination of his employment based on race.  The specifics of a prima facie case of disparate treatment will vary and are dependent upon the type and circumstances of the employment action under attack.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 n.13 (1973); Washington v. Garrett, 10 F.3d 1421, 1433-34 (9th Cir. 1993).   In general, the factors of a prima facie case include:  "(1) membership in a protected class; (2) qualification for the job or satisfactory performance of the job; (3) an adverse employment decision; and (4) different treatment than those similarly situated outside of the protected class."  Hotchkins v. Fleet Delivery Serv., 25 F. Supp.2d 1141, 1146 (D. Or. 1998) (citing McDonnell Douglas, 411 U.S. at 802).  In a discrimination case concerning a claim of termination based upon race, the Ninth Circuit in Aragon v. Republic Silver State Disposal, Inc., 292 F.3d 654, 658 (9th Cir. 2002), set out the prima facie case as follows:  "(1) he belongs to a protected class, (2) he was qualified for the position, (3) he was subjected to an adverse employment action, and (4) similarly situated non-white individuals were treated more favorably."  (Citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993) (prima facie case to establish disparate treatment based on race). The Ninth Circuit has also stated the prima facie case in the discriminatory discharge context as:  1) plaintiff was within the protected class; 2) plaintiff was doing his job well enough to rule out the possibility that he was fired for inadequate job performance; 3) plaintiff was terminated; and 4) an individual outside the protected class replaced him.

See <u>Sengupta v. Morrison-Knudsen Co., Inc.</u>, 804 F.2d 1072, 1075 (9th Cir. 1986); <u>see also</u> <u>Pejic v. Hughes Helicopters, Inc.</u>, 840 F.2d 667, 672 (9th Cir. 1988).

  Here, there is no evidence in the record that a similarly situated individual outside the protected class was treated more favorably and, thus, Plaintiff cannot establish a prima facie case of discriminatory termination based on his race.


  Even if the record supported a finding that Plaintiff establishes a prima facie case of race discrimination in termination from employment, Defendants offer legitimate non-discriminatory reasons for discharging Plaintiff.  Defendants' evidence is that Plaintiff was discharged because he took unauthorized sick leave; he did not complete mandatory anger management counseling; and he was dishonest and misrepresented facts during a pre-disciplinary hearing, any one of which would support termination of employment. (<u>See</u> Gebhard Decl.; Pl. Dep. 126, 205-06, 224-26, 231-34; Perrin Decl.; Bowdoin Decl. & Ex. J; Deardorff Decl. & Ex. K.)  Plaintiff has not responded and therefor offers no evidence that Defendants' reasons for terminating his employment were pretextual.


  It appears from Plaintiff's complaint allegations that he may be asserting a claim for retaliation by Defendants.  Title VII makes it illegal for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he made a charge . . . under this subchapter."  42 U.S.C. § 2000e-3(a); <u>CBOCS W., Inc. v. Humphries</u>, 553 U.S. 442, 445, 457 (2008). "Section 1981 prohibits 'racial discrimination in taking retaliatory action.'" <u>Surrell</u>, 518

Order - Page 10

F.3d at 1107 (quoting Manatt, 339 F.3d at 798).  Section 1983 will support a claim of

retaliation based on race.  Bell v. Clackamas County, 341 F.3d 858 (9th Cir. 2003).  To

establish a prima facie case of retaliation, a plaintiff must establish that:  (1) he engaged

in a protected activity; (2) defendant subjected him to an adverse employment action; and

(3) a causal connection exists between the protected activity and the adverse action.

Surrell, 518 F.3d at 1108.  Even if Plaintiff could establish a prima facie case that

Defendants retaliated against him, Defendants offer legitimate non-retaliatory reasons for

terminating his employment, supra, and Plaintiff has offered no evidence that Defendants'

explanation for his termination was pretextual.  See id.

## IV.  ORDER

Based on the foregoing, it is ordered that Defendants' motion for summary

judgment (#62) is granted.  Judgment shall be entered in favor of Defendants and against

Plaintiff.

IT IS SO ORDERED.

DATED this ___ day of November 2010.

_____
UNITED STATES MAGISTRATE JUDGE